UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TE Connectivity Networks, Inc.,

      Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 13-1356 ADM/FLN

All Systems Broadband, Inc.,

      Defendant.

___

Randall E. Kahnke, Esq., and Matthew B. Kilby, Esq., Faegre Baker Daniels, LLP, Minneapolis, MN, on behalf of Plaintiff.

Lewis A. Remele, Jr., Esq., Frederick E. Finch, Esq., Jan M. Gunderson, Esq., Jonathan C. Marquet, Esq., and Pamela D. Steinle, Esq., Bassford Remele, PA, Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Defendant All Systems Broadband, Inc.'s ("ASB") Motion to Dismiss [Docket No. 12]. Plaintiff TE Connectivity Networks, Inc. ("TE") opposes the motion. For the reasons stated herein, ASB's motion is denied.

## II. BACKGROUND

TE, a Shakopee, Minnesota, based company, develops and sells "fiber connectivity products" used in the telecommunications industry. Compl. [Docket No. 1] ¶¶ 1, 3. TE distributed some of its products through TriNet Communications ("TriNet"). Id. ¶ 8. In 2005, several executives from TriNet formed ASB, a company based in Livermore, California. Id. ¶¶

4, 9.[1]  At first, ASB did not compete with TE.  However, starting in 2009, TE alleges ASB hired several former TE and TriNet employees who possessed trade secrets and confidential or proprietary information about TE's products and sales.[2]  Id. ¶¶ 14-25.  Several of these

---

[1] Alleged TriNet/ABS executives:

| Individual | TriNet employment title (dates employed) | ABS employment title (dates employed) |
| --- | --- | --- |
| Jon Fernandez | President and CEO (before 2005 - Feb. 2012) | Chairman (founded 2005 - ) |
| Sean Fernandez | Vice President of Operations (before 2005 - Mar. 2012) | COO (2005 - ) |
| Jason Skeoch | Vice President of Sales and Marketing (Jan. 1995 - Apr. 2012) | CEO (Jan. 2007 - ) |
| Everett Hirsh | Vice President of Sales (currently employed) | Regional Vice President (currently employed) |

Compl. ¶¶ 9-13.

[2] Alleged former TE employees, now working for ABS:

| Individual | TE employment title (dates employed) | ABS employment title (dates employed) |
| --- | --- | --- |
| Michael Grice | Regional Sales Manager and Product Management Director for Research and Development (Aug. 1988 - Oct. 2008) | Vice President of Product Development (Jul. 2009 - ) |
| Craig Ray | Product Manager and Applications Engineer Manager (Dec. 1987 - May 2009) | Engineering Product Manager (Aug. 2009 - ) |
| Joel ("J.D.") Smith | Regional and National Sales Manager (Apr. 1994 - Oct. 2009) | Vice President of Sales (Oct. 2009 - ) |
| Donald Gross | Applications Engineer (Jun. 2005 - Dec. 2010) | Applications Engineer (Feb. 2011 - ) |

employees were bound by confidentiality agreements with TE. Id. ¶¶ 26-28. From these employees, TE alleges ASB misappropriated trade secrets and used proprietary or confidential information to develop and market competing products.

More specifically, TE alleges ASB "quickly developed and began to market competing products that are functionally similar to TE products" including an EPON (ethernet passive optical network) device, CWDM (coarse wavelength division multiplexing) device, and a Fiber Demarc(ation) Box. Id. at ¶ 26. TE claims ASB did not market any of these products prior to hiring former TE employees and that these former employees "had access to TE confidential or proprietary information and trade secrets reflected in TE's versions of these three products, and were involved in the development of one or more of these products while at TE." Id. ¶¶ 27, 29-

| Heidi Slocum | Salesperson (Mar. 2011 - Apr. 2011) | Salesperson (Apr. 2011 - ) |
|---|---|---|
| Eric Vann | Manufacturing Engineer and Product/Quality Engineer (Aug. 1990 - Jun. 2011) | Product Engineering Manager (Jul. 2011 - ) |
| David Braga | Product Manager and Marketing Manager (Jun. 2004 - Dec. 2011) | Director of Business Development (Jan. 2012 - ) |
| Bob Manzak | Senior Engineer (in R&D) (Mar. 1989 - May 2012) | Senior Systems Engineer (Jun. 2012 - ) |
| Larry Fowler | Salesperson (Jan. 1980 - Aug. 2012) | Telecommunications consultant (Dec. 2012 - ) |
| Thomas Belmont | Salesperson (Feb. 1999 - Sept. 2012) | Salesperson (2012 - ) |
| James Kane | Regional Sales Manager for the Northeast (Jun. 2009 - Mar. 2013) | salesperson (Mar. 2013 - ) |

Compl. ¶¶ 14-24.

31 (naming Donald Gross and David Braga as former employees who TE believes developed ASB's competing products using trade secrets and confidential information). TE claims ASB used TE's "technical specifications, design parameters, performance criteria, testing data, confidential customer specifications, pricing, cost, margin, distribution, and supply chain information" to unfairly compete against it. Id. at ¶ 58. In three cases, TE alleges ASB used information and specifications acquired from TE to sell products to unnamed former and prospective clients. Id. ¶¶ 29-31. TE alleges the TriNet/ASB executives had access to TE's "customer-specific pricing, and the design of certain TE products" through its Non-Exclusive Domestic Distributor Agreement. Id. ¶¶ 28, 48. TE identifies former TE employees and the contractual obligations each employee had (and have) to maintain the confidentiality of TE information. Id. ¶¶ 34-52. TE specifically cites contract language from numerous agreements it had with TE and TriNet employees who are now at ASB. Id.

With this factual predicate, TE claims ASB misappropriated its trade secrets (Count I), tortiously interfered with TE's existing contracts and with its prospective advantage (Count II and III), and was unjustly enriched (Count IV) through use of TE's confidential information.

### III. DISCUSSION

**A. Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870,

879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; see also Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (holding "the complaint should be read as a whole, not parsed piece by piece"). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Misappropriation of Trade Secrets**

Under the Minnesota Uniform Trade Secrets Act ("MUTSA"), companies are prohibited from the improper acquisition, disclosure, or use of a trade secret. See Minn. Stat. § 325C.01, subd. 3; Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 897 (Minn. 1983). A trade secret is information which both: (1) derives independent economic value from not being generally known or readily ascertainable through proper means by other persons who could obtain economic value from its disclosure or use; and (2) is the subject of reasonable efforts to

maintain its secrecy.  Minn. Stat. § 325C.01, subd. 5(i)-(ii).  Misappropriation of a trade secret is defined as disclosure or use of a trade secret without express or implied consent by a person who, at the time of disclosure or use, knew that the utilization of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.  Minn. Stat. § 325C.01, subd. 3(ii).

MUTSA provides that "this [Act] displace[s] conflicting tort, restitutionary, and other laws of this State providing civil remedies for misappropriation of a trade secret."  Minn. Stat. § 325C.07(a).  MUTSA does not, however, affect contractual remedies, other civil remedies not based upon misappropriation of a trade secret, or criminal remedies.  Id. § 325C.07(b).  Under MUTSA's displacement provision, a plaintiff may maintain separate causes of action only "to the extent that the causes of action have 'more' to their factual allegations than the mere misuse or misappropriation of trade secrets."  Micro Display Sys., Inc. v. Axtel, Inc., 699 F. Supp. 202, 205 (D. Minn. 1988).

**C.  Sufficiency of MUTSA Allegations**

ASB argues TE has pled no facts to support a plausible claim of trade secret misappropriation.  ASB argues TE's Complaint "offers nothing more than 'the well-pleaded fact of parallel conduct,' and under Iqbal, such claims must be dismissed."  Reply Mem. Supp. Mot. Dismiss [Docket No. 24] at 4.  ASB also argues TE's pleadings are at least as deficient as those found lacking in Hot Stuff Foods, LLC v. Dornbach, 726 F. Supp. 2d 1038 (D. Minn. 2010).  ASB argues cases like Hot Stuff Foods require TE "to assert facts including (1) the name of any particular person who (2) on a particular occasion (3) actually used a particular item of confidential information to develop an element of a particular product."  Mem. Supp. Mot.

Dismiss [Docket No. 13] at 10.

In essence, ASB is attempting to require TE to prove its case before discovery. Iqbal and Twombly do not require particularity to such an extent; they only require plaintiff to allege facts which make a claim plausible on its face. Assuming the facts alleged in the Complaint are true and reading the Complaint as a whole, the Court finds TE's Complaint states plausible allegations sufficient to defeat ASB's motion to dismiss.

In the context of pleading a claim for the misappropriation of trade secrets, a plaintiff is understandably hesitant to reveal the exact parameters of the trade secrets it believes have been misappropriated because a trade secret made public is not a secret. See Superior Edge, Inc. v. Monsanto Co., No. 12-2872, 2013 U.S. Dist. LEXIS 112483, at *52-54 (D. Minn. Aug. 9, 2013) (holding "the exact nature of the trade secret is a matter for discovery"); see also SL Montevideo Tech., Inc. v. Eaton Aero., LLC, 292 F. Supp. 2d 1173, 1179 (D. Minn. 2003); FDIC v. Binetti, No. 10-5083, 2011 U.S. Dist. LEXIS 7320, at *8 (N.D. Ill. Jan. 26, 2011) ("[T]rade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets.") (quotation omitted); Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd., 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011) ("[T]he alleged trade secrets need not be disclosed in detail in a complaint to survive a motion to dismiss."). However, a plaintiff cannot rely on conclusory statements that simply repeat the elements of its claim; the plaintiff must disclose sufficient information to infer more than a mere possibility of misconduct. In Hot Stuff Foods the court found the plaintiff alleged that an executive had "access to and knowledge of [plaintiff's] trade secrets and confidential information." 726 F. Supp. 2d at 1044. The court found it could not "reasonably infer the

existence of trade secrets" because the plaintiff did not "set forth facts showing that the information had independent economic value due to its secrecy, was not readily ascertainable by others and that [the plaintiff] took efforts to maintain its secrecy." Id. The court thus found the pleadings conclusory as to the MUTSA claim. Id.

While TE is somewhat vague about what trade secrets and confidential information was taken by ASB, when the allegations are viewed as a whole, the Court finds more than a mere possibility of misconduct. TE's allegations are not generalized or conclusory. TE is specific about which of its products have trade secrets, naming the EPON, CWDM, and Fiber Demarc Box products. As to those products, TE identifies its trade secrets as "technical specifications, design parameters, performance criteria, testing data, . . ." and so forth. Compl. ¶ 58; see Matson Logistics, LLC v. Smiens, No. 12-400, 2012 U.S. Dist. LEXIS 77454, at *29 (D. Minn. June 5, 2012). TE alleges it designed these products to particular specifications for clients, and that ASB did not sell these products until after it had hired TE and TriNet employees. ASB's new hires had worked on the development of these products at TE, were hired in positions at ASB with the same or similar job titles, and ASB soon after began selling EPON, CWDM, and Fiber Demarc Box products to TE customers. For example, ASB marketed an EPON product to at least one current TE customer, who TE alleges decided to buy that product from ASB. Further, ASB marketed a CWDM device to at least one TE customer to meet particular specifications. Although the clients and specifications are not named, the allegations are far from the conclusory allegations found in Hot Stuff Foods and similar cases.

ASB argues that EPON, CWDM, and Fiber Demarc Box products are generic and involve no trade secrets, but two factual allegations suggest at this stage that trade secrets exist.

First, ASB did not develop these products until after they hired employees from TE who had expertise in their development. And second, clients ordered products to meet certain specifications, suggesting the products are not generic and interchangeable. Compl. ¶¶ 30-31. In addition, TE has identified confidentiality agreements, which in addition to the other allleged facts, suggest TE had trade secrets and made reasonable efforts to maintain those secrets. Reading the Complaint as a whole, the Court can reasonably infer TE has stated a MUTSA claim.

**D.  Minnesota Tortious Interference and Unjust Enrichment**

TE claims ASB interferred with TE and TriNet employee contracts and was unjustly enriched by the use of confidential information to copy and sell TE products to TE customers. TE alleges that when ASB was formed by TriNet executives, those executives ignored their contractual obligations to maintain confidentiality and protect trade secrets by developing, marketing, and selling copies of TE's EPON, CWDM, and Fiber Demarc Box products.

Minnesota law recognizes two separate torts relating to interference with economic relations: (1) interference with an existing contract; and (2) interference with a prospective business relation. See Superior Edge, 2013 U.S. Dist. LEXIS 112483, at *54 (citing Hern v. Bankers Life Cas. Co., 133 F. Supp. 2d 1130, 1137 (D. Minn. 2001). A plaintiff claiming tortious interference with an existing contractual relationship (Count II) must show: (1) a valid contract; (2) that the defendant knew of the contract; (3) that defendant intentionally procured a breach of the contract without justification; and (4) that plaintiff suffered injuries as a direct result of the breach. Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994). "[M]erely entering into an agreement . . . is not tortious interference if [defendant] did nothing to induce" a breach

of the agreement. Salon 2000, Inc. v. Dauwalter, No. A06-1227, 2007 Minn. App. Unpub. LEXIS 531, at *5 (Minn. Ct. App. June 5, 2007).

Tortious interference with prospective advantage (Count III) requires a plaintiff show the following elements: (1) the defendant intentionally and improperly interfered with the prospective contractual relationship; (2) causing pecuniary harm from the loss of the relationship's benefits; and (3) the interference either (a) induced or caused a third person not to enter into or continue the prospective relationship or (b) prevented the continuance of the prospective relationship. United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 633 (Minn. 1982). Liability for this type of unfair competition claim only occurs where the actor's conduct is improper. Fox Sports Net N., L.L.C. v. Minn. Twins P'ship, 319 F.3d 329, 337 (8th Cir. 2003). "For purposes of this tort, improper means are those that are independently wrongful such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade or any other wrongful act recognized by statute or the common law." Harman v. Heartland Food Co., 614 N.W.2d 236, 241 (Minn. Ct. App. 2000) (quotation omitted).

Minnesota law also recognizes a claim for unjust enrichment (Count IV) and requires a showing that "another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." Schumacher v. Schumacher, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001).

E.  **Sufficiency of the Common Law Claims**

ASB argues that MUTSA displaces these claims because they are rooted in TE's trade secrets misappropriation allegations and nothing else. ASB's focus on trade secrets is narrower than what TE's Complaint alleges. TE alleges more than mere misuse or misappropriation of

trade secrets. See Micro Display Sys., 699 F. Supp. at 205. Beyond misappropriation, TE alleges ASB interfered with its employees' confidentiality agreements, which though they admittedly included coverage of trade secrets, also included confidential information, such as customer specific pricing lists, that does not reach the level of being a trade secret. MUTSA does not displace TE's claims to the extent that they are based on confidential information that does not reach the level of trade secrets. Cardiac Pacemakers, Inc. v. Aspen II Holding Co., 413 F. Supp. 2d 1016, 1023-24 (D. Minn. 2006). But even if it ultimately is determined that all of TE's claims are trade secret claims, at this stage of the proceedings, TE need not plead with the specificity ASB demands. See Dow Corning Corp. v. Jie Xiao, No. 11-10008-BC, 2011 U.S. Dist. LEXIS 54619, at *41 (E.D. Mich. May 20, 2011); Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc., 295 F. Supp. 2d 430 (D. Del. 2003) (holding that even if a defendant's misappropriation claims are ultimately preempted, at the motion to dismiss stage, plaintiff "may plead in the alternative, or assert alternative recoveries").[3]

Since TE's common law claims are not displaced at this stage of the proceedings, the next question is whether TE has satisfied the pleading requirements. As with its MUTSA claim, taking the Complaint as a whole, TE has sufficiently pled the elements of these common law claims, allowing the Court to infer more than the mere possibility of misconduct and view the plausibility of the claims from the face of the Complaint. For example, TE alleges ASB/TriNet employees used TE's customer-specific pricing, which the employees had access to through

---

[3] If ASB is ultimately correct that TE's alleged trade secrets are not trade secrets, then granting ASB's motion to dismiss for TE's common law claims on the basis that the allegations are only rooted in trade secret claims would be counterintuitive. The Court's focus now is whether TE's Complaint survives ASB's motion to dismiss.

TriNet executives, to undercut TE's prices and entice a longstanding TE customer to ASB. Compl. ¶ 31.  ASB executives also actively pursued hiring former TE employees, whom they should have known had similar confidentiality agreements.  Id. ¶ 65.  The TriNet/ASB executives' dual employment, their confidentiality agreements, their hiring of TE employees into jobs with similar and identical titles, the TE employees' confidentiality agreements, the appearance of at least three ASB products similar to TE's products that ASB had never sold before hiring former TE employees, and the pursuit of and sale to current and prospective TE customers are all indicia that suggest at this early stage that ASB tortiously interfered with TE's existing contracts and prospective clients and may have profited unjustly as a result.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 12] is **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 26, 2013.